UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JODI ASAY,<br><br>      Plaintiff,<br><br>      v.<br><br>NEW JERSEY TRANSIT RAIL OPERATIONS, INC., NEW JERSEY TRANSIT RAIL CORP., BROTHERHOOD of LOCOMOTIVE ENGINEERS and TRAINMENT, FRED MATTISON, ALAN ANTELL, DONALD BROCHARDT and JOHN DOES 1-25 (fictitious names),<br><br>      Defendants. | Civil Action No.: 19-16503(JXN) (MAH)<br><br>**OPINION** |

**NEALS**, District Judge

      This matter comes before the Court on Defendants New Jersey Transit Rail Operations, Inc., New Jersey Transit Rail Corp., Fred Mattison, Alan Antell, and Donald Broschart's (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 105.) Plaintiff Jodi Asay ("Plaintiff" or "Asay") filed an opposition to the motion (ECF No. 108), and Defendants replied in further support. (ECF No. 107). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion for summary judgment (ECF No. 105) is **GRANTED**, and Plaintiff's Second Amended Complaint (ECF No. 55) is **DISMISSED with prejudice**.

I.  **BACKGROUND**

Plaintiff brings this action against Defendants under the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3) ("FRSA"). (Second Amended Complaint ("SAC") ¶¶ 5, 12, ECF No. 55.) At all relevant times, Plaintiff was employed by New Jersey Transit Rail Operations, Inc., or New Jersey Transit Rail Corp ("NJT") (SAC ¶¶ 5, 12.) Plaintiff alleges that she "engaged in numerous protected activities regarding her safety concerns at NJT." (SAC ¶ 95.) Plaintiff was concerned with NJT's alleged practice of "short turns," where NJT would allegedly "cut corners" on federally regulated safety inspections required before each trip. (SAC ¶¶ 28, 30, 32.)

Beginning in or around June 2014, Plaintiff submitted a grievance with her union regarding the alleged practice of "short turns" and the danger they posed to NJT employees and the public. (SAC ¶ 33.) Plaintiff also contacted individuals at the Federal Railroad Administration ("FRA"), the New Jersey Department of Transportation, Governor Chris Christie's Office, and her union's headquarters. (SAC ¶¶ 34 – 36.) On or around October 17, 2016, Plaintiff alleges that she informed NJT's insurance carrier, Liberty Mutual, that NJT was engaging in the practice of short turns and that it posed a danger to passengers and NJT employees. (SAC ¶ 37.)

Plaintiff further alleges that, as a result of these protected activities, "NJT took adverse and unfavorable employment actions against [Plaintiff], and engaged in a pattern of retaliatory behavior" that culminated "in her termination from NJT." (SAC ¶ 97.) Specifically, Plaintiff alleges that "false and unwarranted charges were brought against her based on incidents alleged to have occurred on November 3, 2016 and September 22, 2017." (SAC ¶ 39.) The following facts pertaining to each incident are largely undisputed.

### A. The November 3, 2016 Incident

On November 3, 2016, Plaintiff was operating NJ Transit Train 3957 from New York Penn Station to Morrisville, Pennsylvania, during a regularly scheduled "run." (Defs' Mem. Supp. Summ. J., Material Facts Not in Dispute Re: November 3, 2016 Incident ("Nov. 3 Facts") ¶ 1, ECF No. 105-3.) AMTRAK controls the territory on which Train 3957 was operating. (Nov. 3 Facts ¶ 3.) During the run, Plaintiff cut out the cab signal system and requested permission from AMTRAK to operate the train at a speed different from what was allegedly assigned in that territory. (Nov. 3 Facts ¶¶ 2, 3.)

After the incident, Plaintiff was temporarily barred from performing any service on AMTRAK territory. (Nov. 3 Facts ¶ 6.) In addition, Plaintiff was charged with violating 49 CFR § 240.117(e)(2) (operating more than 10 m.p.h. above a Maximum Authorized Speed) and was mailed a Notification of Certificate of Suspension in accordance with 49 CFR § 242.407(b)(2). (Nov. 3 Facts ¶ 7.) After a petition for protection from discipline was filed under The Confidential Close Call Reporting System ("C3RS"), Plaintiff was notified that the suspension of her Locomotive Operator Certificate was being upheld. (Nov. 3 Facts ¶ 8.)

A disciplinary Hearing and Investigation was initiated on November 29, 2016, and concluded on December 9, 2016. (Nov. 3 Facts ¶ 9.) NJ Transit also conducted its own review of Plaintiff's C3RS petition and found that a "Real-Time Observation" of the violation had been made and thus denied the discipline protection. (Nov. 3 Facts ¶¶ 10, 11.) As a result of this decision and the Hearing and Investigation, the thirty-day suspension of Plaintiff's Locomotive Operator Certificate was upheld and assessed on December 15, 2016. (Nov. 3 Facts ¶ 12.)

Plaintiff filed an appeal, which was reviewed with members of her Union and ultimately denied on January 24, 2017. (Nov. 3 Facts ¶ 13.) The Federal Railroad Administrative Locomotive

Engineer Review Board upheld the suspension on August 3, 2017. (Nov. 3 Facts ¶ 14.) The matter of discipline proceeded to an arbitration hearing before a Special Board of Adjustment panel. (Nov. 3 Facts ¶ 15.) The panel upheld the thirty-day suspension. (Nov. 3 Facts ¶ 16.)

### B. The September 22, 2017 Incident

On September 22, 2017, Plaintiff was assigned to operate Train 3957 as it proceeded from New York Penn Station. (Defs' Mem. Supp. Summ. J., Material Facts Not in Dispute Re: September 22, 2017 Incident ("Sep. 22 Facts") ¶ 1, ECF No. 105-3.) At approximately 6:15 P.M., the train passed through a "stop signal display." (Sep. 22 Facts ¶ 2.) After this incident, Plaintiff was temporarily barred from performing any service on AMRTAK territory. (Sep. 22 Facts ¶ 3.) In addition, Plaintiff was charged with violating 49 CFR § 240.117(e)(1) (failure to control a locomotive or train in accordance with signal indication excluding a hand or radio signal indication or a switch that requires a complete stop before passing it) and was mailed a Notification of Certificate Suspension in accordance with 49 CFR § 242.407(b)(2). (Sep. 22 Facts ¶ 4.) After a Hearing and Investigation on November 28, 2017, Plaintiff was dismissed from service and had her Locomotive Operator's Certificate revoked. (Sep. 22 Facts ¶¶ 5, 6.)

The matter proceeded to arbitration before the Special Board of Adjustment panel, which upheld the discipline. (Sep. 22 Facts ¶ 7.) Specifically, the panel found "no basis exists to set aside the discipline" and "having considered the seriousness of the proven violation in this case, along with the [Plaintiff]'s prior de-certifiable offense of November 3, 2016… we cannot find that [NJ Transit]'s decision to terminate the Claimant is arbitrary, capricious or excessive." (Sep. 22 Facts ¶ 8.)

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548. If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366. Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each

and every essential element of his case."). "A mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party."). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III. DISCUSSION

Under the FRSA, a railroad carrier engaged in interstate or foreign commerce shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for reporting, in good faith, a hazardous safety or security condition. 49 U.S.C.A. § 20109(b)(1)(A). To prevail on a FRSA retaliation claim, an employee must demonstrate that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Maxwell v. Port Auth. Trans Hudson Corp.*, No. CV 21-1040 (SDW) (LDW), 2024 WL 3064691 (D.N.J. June 20, 2024) (quoting *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)). "The plaintiff-employee need only show that his [or her] protected activity was a 'contributing factor' in the retaliatory discharge or discrimination, not the sole or even predominant cause." *Araujo*, 708 F.3d at 157 (citation omitted). Once the plaintiff-employee makes such a showing, "the burden shifts to the employer to demonstrate 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.'" *Id*. This burden-shifting framework is protective of plaintiff-employees. *See Maxwell*, 2024 WL 3064691 at 7* (quoting *Araujo*, 708 F.3d at 158).

Defendants argue that Plaintiff has not supported her FRSA claims. (Defs' Mem. Supp. Summ. J. ("Motion") at 2, ECF No. 105-3.). The undisputed facts show that Plaintiff engaged in protected activity when she submitted grievances to her union and Liberty Mutual concerning the alleged "short turns." It is also clear that Plaintiff suffered an unfavorable personnel action when her Locomotive Operator Certificate was suspended, and she was ultimately terminated. What is disputed is (1) whether NJ Transit knew about Plaintiff's grievances and (2) whether those grievances were a contributing factor to the unfavorable personnel action against Plaintiff. In viewing the material facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to establish that NJ Transit knew about Plaintiff's submission to Liberty Mutual and that the submission was a contributing factor to her termination.

Other than her own testimony, Plaintiff has not submitted any evidence to show that NJ Transit was aware that Plaintiff submitted a grievance regarding alleged "short runs" to Liberty Mutual. In her deposition, Plaintiff testified that she provided the grievance previously submitted to her union concerning alleged "short runs" to Liberty Mutual during a safety forum. (Pl.'s Opp'n Br., Exhibit 18, Transcript of Deposition of Jodi Assay dated February 10, 2022 ("Asay Tr.") 64:9 – 65:12, ECF No. 108-21.) The union grievance that Plaintiff testified that she submitted to Liberty Mutual does not reference her name. (Pl.'s Opp'n Br., Exhibit 6, Grievance signed June 8, 2014, ECF No. 108-9.) Plaintiff further testified that "the company," presumably NJ Transit, knew she was at the forum and that after submitting the grievance, Liberty Mutual asked everyone at the forum if "short turns" were occurring on NJ Transit property, to which everyone confirmed. (Asay Tr. 65:13 – 66:1.)

Defendants provided testimony from NJ Transit employee Defendant Alan Antell ("Antell"), whose signature appears on the Notice of Discipline terminating Plaintiff. (Pl.'s Opp'n

7

Br., Exhibit 7, ECF No. 108-10.)[1] Antell testified that he did not participate in the Liberty Mutual safety forum and was not aware of what the forum was about or its outcome. (Motion at 31, ¶¶ 12 – 13.) Defendants also submitted testimony from Defendant Fred Mattison, who was present at the November 28, 2017, hearing that resulted in Plaintiff's termination. (Motion at 2.) Mattison testified that he was not involved with the Liberty Mutual forum and did not know Plaintiff attended until after this lawsuit was filed. (Motion at 29, ¶ 17.)

Likewise, Plaintiff has not shown that the submission was a contributing factor to her termination. Mattison also testified that, regarding the September 2017 incident, Plaintiff's failure to observe the stop signal was the "sum and substance" for her being formally charged. (Motion at 30, ¶¶ 26 – 27.) Plaintiff's expert, Michael T. Brown, testified that it was clear that Plaintiff was retaliated against "solely based on the timing." (Motion at 37.) Although the timing, in Brown's opinion, "seems a little bit odd," this sort of speculation does not survive summary judgment. *See Jackson*, 594 F.3d at 227 (3d. Cir. 2010). Temporal proximity between the employee's engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected activity was a contributing factor to the adverse employment action. *Araujo,* 708 F.3d at 160. Nevertheless, Plaintiff must show that her protected activity was a "contributing factor" in the retaliatory discharge or discrimination based upon a preponderance of the evidence. *Id.* at 157 (citation omitted). Plaintiff fails to do so based on the record evidence.

---

[1] There is some discrepancy regarding who signed Antell's name at the bottom of the Notice of Discipline. Antell testified that he was on vacation and did not adjudicate Plaintiff's termination but that he forwarded the hearing transcript to Sheldon Booker so Booker could "read the transcript and then adjudicate and discuss with … the Deputy General Manager…" (Pl.'s Opp'n Br., Exhibit 21, Transcript of Deposition of Alan Antell dated March 23, 2022 ("Antell Tr.") 23:7 – 24, ECF No. 108-24.) Sheldon Booker testified that he doesn't know if he adjudicated Plaintiff's termination but that he "heard Al [Antell] was on vacation" and that adjudicating Plaintiff's termination is "something [Booker] would have done [] in his absence." (Pl.'s Opp'n Br., Exhibit 15, Transcript of Deposition of Sheldon Booker June 8, 2022 ("Booker Tr.") 40:4 – 9, ECF No. 108-18.)

Concerning the November 3, 2016 incident, Plaintiff cut out the cab signal system and requested permission from AMTRAK to operate the train at a different speed than what was allegedly assigned in that territory. (Nov. 3 Facts ¶¶ 2, 3.) Consequently, Plaintiff was temporarily barred from performing any service on AMTRAK territory (Nov. 3 Facts ¶ 6.) and charged with violating 49 CFR § 240.117(e)(2) (operating more than 10 m.p.h. above a Maximum Authorized Speed) After a series of unsuccessful appeals and an arbitration hearing, Plaintiff's thirty-day suspension was upheld. (*See* Nov. 3 Facts ¶¶ 8;12;13;15;16.)

As to the September 22, 2017 incident, Plaintiff was assigned to operate Train 3957 as it proceeded from New York Penn Station and passed through a "stop signal display." (*See* Sep. 22 Facts ¶¶ 1; 2.) After this incident, Plaintiff was temporarily barred from performing any service on AMRTAK territory. (Sep. 22 Facts ¶ 3.) In addition, Plaintiff was charged with violating 49 CFR § 240.117(e)(1) (failure to control a locomotive or train in accordance with signal indication excluding a hand or radio signal indication or a switch that requires a complete stop before passing it). (Sep. 22 Facts ¶ 4.) After a Hearing and Investigation on November 28, 2017, Plaintiff was dismissed from service and had her Locomotive Operator's Certificate revoked. (Sep. 22 Facts ¶¶ 5, 6.) Following an arbitration before the Special Board of Adjustment panel, the panel upheld the discipline. (Sep. 22 Facts ¶ 7.) Specifically, the panel found "no basis exists to set aside the discipline" and "having considered the seriousness of the proven violation in this case, along with the [Plaintiff]'s prior de-certifiable offense of November 3, 2016… we cannot find that [NJ Transit]'s decision to terminate the Claimant is arbitrary, capricious or excessive." (Sep. 22 Facts ¶ 8.)

The record overwhelmingly demonstrates that Plaintiff has failed to meet her burden. Plaintiff's suspension and termination were upheld after a series of appeals, and Plaintiff has

produced no evidence to show that the employment actions were based on anything other than Plaintiff's own actions. Moreover, even if Plaintiff arguably had met her burden, once the burden shifts to the employer, the evidence is clear and convincing that "the employer would have taken the same unfavorable personnel action in the absence of that behavior.'" *Jackson*, 594 F.3d at 227.

Accordingly, the Court grants Defendant summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 105) is **GRANTED**, and Plaintiff's Second Amended Complaint (ECF No. 55) is **DISMISSED with prejudice**.  An appropriate Order accompanies this Opinion.

**DATED:** September 20, 2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge